IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARA R. REEDY, )
 )
        Plaintiff, )
 )
vs. ) 2:06cv1080
 ) Electronic Filing
TOWNSHIP OF CRANBERRY, FRANK S. )
EVANSON, individually and in his official )
capacity as a Police Officer of the Township of )
Cranberry; STEVE MANNELL, individually and )
in his official capacity as the Public Safety Director )
of the Township of Cranberry; KEVIN MEYER, )
individually and in his official capacity as a )
Police Officer of the Township of Cranberry; )
COUNTY OF BUTLER; WILLIAM F. )
FULLERTON, individually and in his official )
capacity as an Assistant District Attorney of )
Butler County; TIMOTHY F. MCCUNE, )
individually and in his official capacity as the )
District Attorney of Butler County. )
 )
        Defendants. )

## OPINION

Plaintiff commenced this civil rights action pursuant to 42 U.S.C. § 1983 seeking redress for alleged violations of her constitutional rights stemming from an arrest and criminal prosecution. Presently before the court is the Cranberry defendants' ("Defendants")[1] "Motion to Dismiss Pursuant to FRCP 12(b)(6) and for More Definite Statement Pursuant to FRCP 12(e)." For the reasons set forth below, the motion will be granted in part and denied in part.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir.

---

[1] The "Cranberry defendants" are the Township of Cranberry; Frank S. Evanson, a police officer of Cranberry Township; Kevin Meyer, also a Cranberry Township police officer; and Steve Mannell, the Public Safety Director of Cranberry Township. The claims against the other defendants have been settled.

1989). Dismissal of a complaint is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). The question is not whether the plaintiff will ultimately prevail; instead, it is whether the plaintiff can prove any set of facts consistent with the averments of the complaint which would show the plaintiff is entitled to relief. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Under this standard a complaint will be deemed sufficient if it adequately puts the defendant on notice of the essential elements of a cause of action. Nami, 82 F.3d at 66.

Plaintiff Sara R. Reedy ("Reedy") was a nineteen year old cashier at the JG Gulf Station in Cranberry Township in July of 2004. On July 14, 2004, she was working alone at the station when an individual entered the store around 11:40 p.m., pulled out a pistol, and ordered her to sit behind the counter. The assailant proceeded to empty the register and then sexually assaulted Reedy while holding the pistol to the left side of her head and threatening to kill her. Reedy was ordered to the back office. There, the assailant removed envelopes of money from the safe, directed Reedy to rip the telephone lines from the wall and told her to remain in the back room for five minutes. Reedy fled from the station a few minutes later and sought assistance at a nearby station. Complaint at ¶¶ 12-18.

The Cranberry Township Police were contacted and Reedy provided information regarding the robbery and sexual assault to several officers. She was then taken to a hospital for treatment and to gather evidence of the assault. Defendant Evanson was a detective assigned to the case. He investigated the scene and interviewed Reedy at the hospital. Evanson formed the belief that Reedy had taken the money from the station in order to support a heroin habit and then fabricated the story about the armed assailant and sexual assault. While Reedy was in the hospital, Evanson allegedly, without either a warrant or informed consent, directed the hospital to perform toxicology screens on Reedy's blood. Id. at ¶¶ 19-25.

Evanson confronted Reedy while she was still receiving treatment and accused her of fabricating the robbery and assault in order to obtain money. A few days later, Reedy gave a detailed statement about the incident, which included allegations of inappropriate treatment by Evanson. Defendants Evanson and Meyer visited Reedy at her home about a month later and allegedly attempted to intimidate her into admitting she had committed the robbery and fabricated the sexual assault. Reedy refused to do so. Evanson indicated he would return with a warrant for Reedy's arrest.

Reedy attended a Workers' Compensation Hearing on January 14, 2005, and Evanson thereafter filed a criminal complaint and proceeded to obtain a warrant for Reedy's arrest. Reedy was charged with making a false report to law enforcement, theft by unlawful taking, and receiving stolen property. Reedy became aware of the warrant on January 18, 2005, and turned herself in at a district magistrate's office on January 19, 2005. Evanson testified at the preliminary arraignment and contended Reedy was a flight risk, notwithstanding that she had no serious criminal record, had little money and was four months pregnant. Bond was set in the amount of $5,000. She served five days in jail while awaiting a bail reduction hearing.

Trial was set for September 19, 2005. One month before trial a man was arrested in the process of committing a robbery and assault of a convenience store clerk in Brookville, Pennsylvania, and this individual confessed to the assault on Reedy during the interrogation that followed. Id. at ¶¶ 26-32, 38-40. Subsequently, all charges against Reedy were dropped.

As a result of the above events, Reedy was dismissed from her job and allegedly has suffered various psychological conditions, including anxiety, post-traumatic stress disorder and depression. Reedy has been receiving on-going treatment for these conditions and has been unable to return to vocational school or work due to the effects from the above-described events. Id. at ¶¶ 53-62.

## I. The Substantive Claims

The complaint advances the following counts against one or more of the Cranberry

3

defendants: Count One - unlawful search in violation of the Fourth Amendment; Count Two - unlawful seizure in violation of the Fourth Amendment; Count Three - false imprisonment in violation of the Fourth Amendment; Count Four - unlawful detention in violation of the Fourth Amendment; Count Five - retaliation for exercise of Fifth Amendment right against self-incrimination; Count Six - malicious prosecution in violation of the Fourth Amendment; Count Seven - harm to liberty interest in violation of the Fifth Amendment; Count Eight - state law claim for false arrest and false imprisonment; Count Ten - state law claim for abuse of process; and Count Eleven - state law claim for intentional infliction of emotional distress.[2] Defendants have moved to dismiss Count Three (false imprisonment); Count Four (unlawful detention); Count Five (retaliation for exercising Fifth Amendment right against self-incrimination); Count Seven (harm to liberty interest); and Count Eleven (intentional infliction of emotional distress). Each of these will be addressed in turn.

### A. Counts 3 and 4 (False Imprisonment and Unlawful Detention)

Defendants contend the counts for false imprisonment and unlawful detention are redundant to the count for unlawful seizure and should be dismissed. Plaintiff maintains that these causes of action require proof of different elements and vindicate separate injuries and harms and therefore are not redundant.

False imprisonment and unlawful detention are essentially two names for the same tort. See Potts v. City of Philadelphia, 224 F. Supp.2d 919, 936 (E.D. Pa. 2002) ("A plaintiff may assert a § 1983 claim for unlawful detention, also referred to as false imprisonment....") In fact, for over a century it has been recognized that "[a]t common law, as applied in Pennsylvania, '[t]he gist of false imprisonment is unlawful detention.'" Kedra v. City of Philadelphia, 454 F. Supp. 652, 666 (E.D. Pa. 1978) (quoting McCarthy v. DeArmit, 99 Pa. 63, 71 (1881)). Consequently, Count Four will be dismissed as redundant.

---

[2] Count Nine, a state law claim for malicious prosecution, is not asserted against any of the Cranberry defendants.

In contrast, unlawful seizure, also known as false arrest, and false imprisonment are recognized as separate torts with different elements. The elements of unlawful seizure/false arrest are 1) an arrest made without probable cause or 2) one made by someone without privilege to arrest. The elements of false imprisonment are 1) the detention of another where 2) such detention is unlawful. Brockington v. City of Philadelphia, 354 F. Supp.2d 563, 572 (E.D. Pa. 2005). The basis for false arrest is the arrest itself, whereas the basis for false imprisonment is the detention that follows the false arrest. Because these causes of action require different elements and protect against different harms, defendants' attempt to dismiss Count Three is misplaced.

### B. Count 5 (Retaliation for Exercise of Fifth Amendment Right Against Self-Incrimination)

Plaintiff alleges that her "unlawful seizure and imprisonment" was undertaken in retaliation for her refusal to change her statement and incriminate herself.[3] Defendants assert Count Five fails to advance a viable cause of action. They argue that if the court were to recognize a retaliation claim arising out of custodial interrogation, then every defendant against whom charges are dropped or who is found not guilty at trial would be entitled to bring such a claim, which in turn could run the risk of crippling the criminal justice system.

Plaintiff's claim fails for two reasons. First, Reedy has alleged no facts that support a causal connection between her refusal to change her statement or incriminate herself and the decision by defendants to place her under arrest. Without a proper factual predicate to raise such an inference, her claim is founded on nothing more than mere conjecture. Second, assuming arguendo that Reedy could overcome this defect in her retaliation claim, it still fails as a matter

---

[3] Plaintiff invoked the Fifth Amendment's protection against self-incrimination in support of this claim. Defendants aptly observed that the Fifth Amendment is only applicable to the federal government and its actors. In response, plaintiff requested leave to amend to bring it as a Fourteenth Amendment due process claim. Brief in Opposition to Motions to Dismiss and For More Definite Statement, at 9-10. Accordingly, the court has assumed that Count Five is brought pursuant to the Fourteenth Amendment.

of law. The Supreme Court has opined:

> [w]here a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.

Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). The genesis of the harm Reedy allegedly has suffered arises from her "unlawful seizure and imprisonment." Complaint at ¶ 84. She has set forth claims for unlawful seizure in Count Two and false imprisonment in Count Three. These claims are brought in violation of the Fourth Amendment, which is the appropriate vehicle through which to address them. Accordingly, defendants' motion to dismiss Count Five will be granted for these reasons.

### C. Count 7 (Harm to Liberty Interest in Violation of the Fifth Amendment)

Reedy alleges that defendants violated her liberty interests in being free from arrest without probable cause, maintaining her reputation, and securing future employment. Complaint at ¶ 93-94.[4] Defendants respond that all three prongs of this claim fail, as the interest in being free from arrest without probable cause must be analyzed under the Fourth Amendment and cannot be brought as a due process claim, one's interest in reputation is not sufficient to constitute a liberty interest, and the "potential loss of future employment" is not a "right or status" protected by due process.

"[R]eputation *alone* is not an interest protected by the Due Process Clause." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (emphasis in original) (quoting Versage v. Township of Clinton, New Jersey, 984 F.2d 1359, 1371 (3d Cir. 1993). However, harm to reputation coupled with harm to another right or interest can rise to the level of a due process

---

[4] As in Count Five, Plaintiff invoked the Fifth Amendment in support of this claim. Defendants aptly observed that the Fifth Amendment is only applicable to the federal government and its actors. In response, plaintiff requested leave to amend to bring it as a Fourteenth Amendment due process claim. Brief in Opposition to Motions to Dismiss and For More Definite Statement, at 13. Accordingly, the court has assumed that Count Seven is brought pursuant to the Fourteenth Amendment.

violation. "[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." Id. (emphasis in original). This is referred to as "stigma plus."

Accepting all of plaintiff's allegations as true and drawing all reasonable inferences therefrom, it is not possible to conclude at this juncture that plaintiff cannot prove a set of facts that would show she is entitled to relief for violation of her liberty interest. Reedy asserts that the conduct of defendants led those who knew her and the public to believe she was both a liar and a thief. Complaint at ¶ 62. She further has alleged numerous constitutional violations, any one of which would be a deprivation of an additional right. These allegations satisfy the "stigma plus" requirements at the pleading stage. Accordingly, defendants' motion to dismiss Count Seven will be denied.[5]

### D. Count 11 (Intentional Infliction of Emotional Distress)

Plaintiff alleges the actions of Evanson and Meyer constituted extreme and outrageous conduct that resulted in emotional distress and bodily harm. Defendants contend it is unclear whether Pennsylvania recognizes a cause of action for intentional infliction of emotional distress and, even if it does, plaintiff has failed to allege a course of conduct that would be deemed to be extreme and outrageous, and she has failed to identify sufficient physical harm resulting from any emotional distress in any event.

> The tort of intentional infliction of emotional distress requires a showing that the defendants acted in a manner "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.

McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005) (quoting Restatement (Second) of Torts § 46 (cmt.)); see also Taylor v. Albert Einstein Medical Center, 754 A.2d 650, 652 (Pa. 2000) and Restatement (Second) § 46(1) ("One who by extreme and outrageous conduct intentionally or

---

[5]Count Seven is the only claim asserted against Cranberry Township. Plaintiff essentially concedes that she has failed to identify a policy, custom or practice that would satisfy the dictates of Monell v. Dep't of Social Services, 436 U.S. 658 (1978), and has agreed to dismiss Count Seven against Cranberry Township without prejudice.

recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.")

Although defendants cast their challenges to this claim as deficiencies in the allegations of the complaint, the burden needed to survive a 12(b)(6) motion is low. The question is not whether the plaintiff will ultimately prevail; instead, it is whether the plaintiff can prove any set of facts consistent with the averments of the complaint which would show the plaintiff is entitled to relief. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Furthermore, heightened fact pleading is not a standard that may be thrust upon plaintiff at this juncture. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (quoting Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993)). Taking plaintiff's allegations as true and giving her the benefit of all reasonable inferences that can be drawn therefrom, coupled with the potential courses of conduct by defendants that could come to light in discovery, it is not possible to say that Reedy cannot prove a set of facts consistent with the allegations of the complaint that would show she is entitled to relief. As such, defendants' motion to dismiss Count Eleven will be denied.

## II. Qualified Immunity

Defendant Mannell seeks to avail himself of qualified immunity on all counts against him. Mannell is the Public Safety Director of Cranberry Township and is responsible for the day-to-day operations of the Township police. He is the supervisor of Evanson and Meyer.

Mannell asserts that plaintiff's complaint "is entirely devoid" of any basis upon which to show he was "present or personally involved in" the events in question. He further notes that the complaint merely references his responsibility for the "day-to-day supervision of the police force" and charges that Evanson and Meyer's actions against plaintiff were committed with his "knowledge or consent" or were ratified by him. Because he purportedly "was not personally involved in the investigation [of plaintiff]," any potential liability necessarily would be based solely on his supervisory position. And proceeding without requiring plaintiff to "plead facts

8

demonstrating the matters of which Defendant Mannell had actual knowledge" will effectively deprive him of being "removed from the case at the earliest possible time if the claims against him are lacking in substance," because the court supposedly cannot "determine whether a reasonable officer having the same information available to him would have been on notice that his conduct was violating a clearly established right of the Plaintiff." Accordingly, he seeks a more definite statement pursuant to Fed. R. Civ. P. 12(e) and Thomas v. Independence Township, 463 F.3d 285 (3d Cir. 2006), or, in the alternative, a dismissal of all claims against him on the basis of qualified immunity. Plaintiff responds that she has alleged sufficient grounds to defeat the defense of qualified immunity.

> Qualified immunity is an affirmative defense
> 
> intended to shield government officials performing discretionary functions, including police officers, "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "A defendant has the burden to establish qualified immunity." Kopec, 361 F.3d at 776.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two-part test to determine whether a defendant is entitled to qualified immunity. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated, there is no need for qualified immunity. If, however, the facts read in the light most favorable to the plaintiff show a violation of a constitutional right, the analysis proceeds to the second step: "whether the right was clearly established... in light of the specific context of the case, not as a broad general proposition." Id. A right is clearly established in the particular context if "a reasonable official would understand that what he is doing violates that right." Id. at 202.

At step two, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in

9

the situation he confronted." Thomas, 463 F.3d at 300. "[T]here is an inherent tension between [conducting this prong of the] federal qualified immunity [analysis] and the concept of notice pleading." Id. at 299.  It arises from the need to conduct the qualified immunity analysis at the earliest stage of the litigation and the Supreme Court's consistent admonishment against grafting a heightened specificity pleading requirement into the Federal Rules of Civil Procedure for civil rights cases. Id. This tension particularly arises where a plaintiff alleges a constitutional violation based upon descriptions of the defendant's conduct that only permit the analysis to be performed at a general and abstract level. Conducting the analysis on this level is insufficient, however, because it effectively transforms the guarantee of immunity established by Harlow and its progeny into a rule of pleading and supplants the protection from suit which the doctrine of qualified immunity is intended to provide.

In light of this tension, the court retains a certain degree of discretion in fashioning the procedural development of the case. This discretion is to be exercised in a manner that protects the substance of the qualified immunity defense while utilizing procedures that remain useful and equitable to the parties. Id. at 301.

Plaintiff's contention that she has advanced "sufficient information to deny Mannell's claim of qualified immunity" is unavailing. To be sure, a supervisor such as a chief of police can be held liable under § 1983 where he or she has participated in a custom, practice, policy or on-going course of conduct to a degree that can be sufficiently said to have a direct causal link to the asserted constitutional violation. See e.g. Stoneking v. Bradford Area School District, 882 F.2d 720, 729-31 (3d Cir. 1988) (providing overview of caselaw focusing on supervisory liability under § 1983 involving officials such as a chief of police). But in this context mere inaction, insensitivity, failure to investigate and the like are insufficient. Id.

Plaintiff argues that detailing the improper course of conduct by Evanson and Meyer, which assertedly led to the violation of a number of clearly established rights, coupled with the allegation that Mannell either had knowledge of or acquiesced in their chosen course, or

thereafter ratified it, is enough. This is so for the purpose of satisfying the notice pleading standard of Rule 8(a). It is also sufficient for satisfying the first step of the qualified immunity analysis. That is, assuming all of Reedy's allegations are true and given all reasonable inferences that can be drawn therefrom, her constitutional rights certainly were violated, as a search without probable cause, a seizure without probable cause, and false imprisonment are all barred by the Fourth Amendment. But plaintiff's allegations against Mannell permit no more than an abstract or generalized analysis at the second step of evaluating a defendant's invocation of the qualified immunity defense. And proceeding to discovery without the fact-specific analysis required in the second step clearly is foreclosed by Thomas. Thomas, 463 F.3d at 299-300 (Vacating district court order where the district court had been unable "to engage in a meaningful fact-specific qualified immunity analysis, and, therefore, denied qualified immunity 'without prejudice to defendants' right to raise their argument again'" at summary judgment.)

Nevertheless, defendants' contention that the proper procedure at this juncture is to require a more definite statement pursuant to Rule 12(e) equally is misplaced. Thomas does suggest that such a motion/procedure will often be useful, particularly where the problem arises from notice pleading that advances nothing more than vague or ambiguous allegations. Id. at 301. But this aspect of Thomas presupposes that the plaintiff could have stated the specific factual allegations against the defendant in more detail and simply chose not to. Id. ("The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief.") While a Rule 12(e) approach provides an adequate process in cases in which the plaintiff could have pled in more detail but chose not to, it does not speak to situations in which the plaintiff has a well-founded basis for the general allegations of the claim based on information and belief, but is not *capable* of detailing the specific allegations against the defendant because such information is exclusively within the possession and control or knowledge of the defendant. If the plaintiff does not have access to such specific information about the defendant's behavior because discovery

has not yet been undertaken, and discovery is the only avenue by which the plaintiff could learn about the defendant's specific undertakings, the plaintiff cannot be expected to allege anything more than what was in the original complaint.

This is exactly the situation in which plaintiff finds herself. She alleges that Mannell knew of and condoned an ongoing course of conduct by Evanson and Meyer, but she cannot detail the specific actions taken by Mannell in furtherance of that allegation because such information is only within the realm of the defendants' knowledge.[6] The gravamen of her claims is that she was intimidated and charged without probable cause in an effort to produce an admission of criminal culpability. Where such a claim is grounded in truth, it is difficult to fathom how the injured party could possibly provide more detail about the defendant's course of conduct and the decision-making process that accompanied it. It is thus readily apparent that while the court could order Reedy to file a 12(e) motion providing a more specific statement, such an undertaking would serve no useful purpose because Reedy is not capable of alleging anything more than she already has.

It is also readily apparent, however, that an adjudication on the merits of the qualified immunity defense would be premature and inappropriate at this juncture. Defendant Mannell essentially asserts without being held to any form of verification that he was not "present or personally involved in" the decision-making process surrounding the arrest and prosecution of Reedy. Only some form of discovery could satisfactorily verify the veracity of Mannell's factual assertion. It is reasonable to infer that detectives and officers often confer with and seek guidance and direction from their supervisors, particularly in challenging or high profile cases. Thus, to foreclose a § 1983 claim on the defense without even so much as the ability to explore that distinct possibility would run the risk of elevating the defense to a level of protection far beyond its intended purpose.

---

[6]In such a setting it properly is assumed that the interactions of a police chief with his officers is not part of any public record or a matter to which the plaintiff was a participant.

In light of these perplexities and the need to employ useful and equitable procedures, the court will stay the case against defendant Mannell, permit plaintiff to pursue discovery on the claims against Evanson and Meyer with authorization to engage in sixty days of discovery about their respective interactions with their superiors regarding the investigation and charges against plaintiff, and permit plaintiff to amend her claims at the end of that period should she choose to do so. In the interim, Mannell's motion to dismiss on qualified immunity will be denied without prejudice to renew after plaintiff either amends her complaint or elects to stand solely on the current allegations against Mannell.[7]

Date: _August 9, 2007_

_David Stewart Cercone_ (signature)
David Stewart Cercone
United States District Judge

cc:  David C. Weicht, Esquire
     Andrew Blattenberger, Esquire
     Leech, Tishman, Fuscaldo & Lampl
     Citizens Bank Building
     525 William Penn Place
     30th Floor
     Pittsburgh, PA 15219

     Scott G. Dunlop, Esquire
     Marshall Dennehey Warner
         Coleman & Goggin
     Suite 2900, U.S. Steel Tower
     600 Grant Street
     Pittsburgh, PA 15219

---

[7]The individual defendants also seek to dismiss all claims to the extent they are brought against them in their "official capacity." "Where a suit is brought against a public offic[ial] in his official capacity, the suit is treated as if [it] were brought against the governmental entity of which he is an offic[ial]." Mitros v. Borough of Glendolen, 170 F. Supp.2d 504, 506 (E.D. Pa. 2001) (citing Brandon v. Holt, 469 U.S. 464, 471-72). Because plaintiff essentially was unable to respond meaningfully to Cranberry Township's contention that she failed to identify an offending custom, policy or practice within the meaning of Monell, the court will dismiss all claims brought against defendants Evanson and Meyers to the extent they are brought against them in their "official capacity." As it relates to Mannell, this aspect of defendants' motion will be denied without prejudice to renew when Mannell reasserts his qualified immunity defense.